In the Matter of the Estate of THERESA GOODWIN, Deceased.

Surrogate's Court, Kings County, June 11, 1937.

*Lawrence Krauss*, for Eva Becker, as administratrix, etc., accountant.

*Louis Dorf*, for Sally Newman, claimant on insurance policies, objectant.

*Soifer & Mitchell* (*Harry Mitchell* of counsel), for Harry Goodwin and Louis Junod, wage claimants.

WINGATE, S. The sole controverted issues in this proceeding relate to the rights of three creditors of the decedent to receive

preferences in payment of their claims from her insolvent estate. The several claims are uncontroverted, the administratrix admitting the right of the claimants to share *pari passu* with other creditors of the estate, while the holders of the claims assert that they should be paid in full at the expense of others.

The claim of Sally Newman is for moneys loaned to the decedent on August 18, 1928, upon which a balance of approximately $600 is asserted to be outstanding. The fundamental premise for her assertion is predicated upon two writings signed and verified by the decedent and respectively dated August 11, 1934, and August 8, 1935. Except for their final paragraph, the texts of the two instruments are substantially identical. They read:

" To whom it may concern

" I Sally Newman * * * have loaned to Theresa Goodwin * * * the sum of $1000 on the 18th day of Aug 1928 and that the said Sally Newman is to receive the amount of interest that I would receive in my Bank I have loaned the above amount to the said Theresa Goodwin on the 18th day of Aug. 1928 and that the said Theresa Goodwin can pay me any amount of said One Thousand Dollars between the present date and the 18th day of Aug 1935."

This is the wording of the first paragraph of the 1934 document. In that dated in 1935, the final date in the script is 1936.

The 1934 instrument then continues:

" In case of death of the said Theresa Goodwin the above amount must be paid me out of the Est. of Theresa Goodwin."

The wording of the subsequent writing substitutes for the last four quoted words: " insurance of Theresa Goodwin."

The figures of the present account demonstrate that the decedent was insured under three policies of life insurance, the aggregate collections under which by the administratrix have totalled $2,755.10, and it is the position of the claimant that the foregoing documents effected a *pro tanto* equitable assignment to her of the moneys collected thereunder.

In view of the familiar fact that the Surrogate's Court is a tribunal of equitable jurisdiction in which the maxim that " equality is equity " prevails, it is incumbent upon the claimant to demonstrate clearly that it was the intention of the decedent in this transaction to reverse this usual mode of procedure and that the acts accomplished in the furtherance of this intention were adequate for the accomplishment of this purpose.

In evaluating the intent of the decedent, as deducible from the language employed, the two documents should be compared and construed together. The first provides that the debt " must be

paid * * * out of the estate." This is merely a statement of what the law would require in any case. It makes no appropriation of any asset for the purpose and grants no authority to the obligee to interfere in any way with its assets. They are obviously to be collected, marshalled and expended by the personal representative of the deceased in the usual manner. Does the substitution of the " insurance " as the fund " out of " which the obligation " must be paid," alter this basic conception of the procedure of solution of the debt to an extent which would warrant a determination that in her dealings with the insurance moneys the personal representative was a trespasser? On the wording of the document such a determination would be unthinkable to this court, yet, in the absence of such an effect, no equitable assignment has been demonstrated.

" To constitute a valid assignment there must be a perfected transaction between the parties intended to vest in the assignee a present right in the thing assigned. An agreement to pay a certain sum out of it, or that one is entitled to receive, from a designated fund, when received, does not operate as a legal or equitable assignment, since the assignor in either case retains control over the subject matter." (*Donovan* v. *Middlebrook*, 95 App. Div. 365, 367.)

" An equitable assignment does not exist where an assignor retains any control over the fund, or any authority to collect, or any power to revoke." (*Farmers' Loan & Trust Co.* v. *Winthrop*, 207 App. Div. 356, 362; affd. as to this point, 238 N. Y. 477.) (See, also, *Matter of Leverich*, 135 Misc. 774, 783; affd. on opinion of this court, 234 App. Div. 625.)

In the present case all of the policies were payable to the estate. Their aggregate total was four and a half times that of the outstanding obligation to the claimant. If an equitable assignment were to be deemed to have been effected, what particular policy or part of a policy is to be deemed to have been assigned? Was it the intention of the decedent that all dealings of her personal representative with this, the principal asset of her estate, were to be deemed tortuous until the claimant had made her election as to which policy to pursue and had received satisfaction of her claim? Any such conclusion is unsupportable. The only intent inferable is that the sums due on the policies were to be collected by the administratrix, and, after this had been accomplished, a portion of the avails thus received was to be paid over by her to the claimant. This, however, retains in the decedent and her estate a control over the fund and destroys the essential prerequisite to an equitable assignment.

Undoubtedly the decedent desired that the claimant should be paid by the administratrix from the insurance moneys which should be collected by the latter. The law has, however, intervened, and, by application of the principle that equality is equity, has frustrated this desire.

The claim for preference in payment made by this claimant is, accordingly, denied.

As in the case of the claimant whose demand has just been considered, the basic propriety of the claims of the other two who seek preference in payment has been admitted by the administratrix. The ground upon which they predicate their assertion of preferential rights is a combination of the first subdivision of section 212 of the Surrogate's Court Act with the enactment contained in section 130 of the Workmen's Compensation Law. The former provides that:

" Every executor and administrator must proceed with diligence to pay the debts of the deceased according to the following order:

" 1. Debts entitled to a preference under the laws of the United States and the State of New York."

Section 130 of the Workmen's Compensation Law reads:

" All premiums and interest charges on account of policies insuring employers against liability under this chapter which may be due to the State Insurance Fund  *  *  *  shall be deemed preferred claims in all insolvency or bankruptcy proceedings, trustee proceedings for administration of estates and receiverships involving the employer liable therefor or the property of such employer, provided however that *claims for wages shall receive prior preference in all such proceedings.*"   (Italics not in original.)

It is asserted by the present claimants that the sums admittedly due them from the estate are for wages while serving in the employ of the deceased.

Strangely enough, the proper interpretation of subdivision 1 of section 212 of the Surrogate's Court Act appears to have been made the subject of judicial expression on only four occasions and never by an appellate tribunal. The first in chronological order is *Matter of Bawer* (137 Misc. 646), in which Surrogate HEN-DERSON of Bronx county, in a brief memorandum which cited no authorities, held that wage claimants were not entitled to a preference. His discussion of the subject is limited to the following: " Counsel has pointed out that there is an analogy between the position of the employees herein and those in bankruptcy cases, cases where a receiver has been appointed and where there has been an assignment for the benefit of creditors. The decedent herein

was insolvent at the time of his death, but no petition in bankruptcy had been filed, no receiver had been appointed and he had made no assignment for the benefit of creditors. While the present situation is perhaps analogous to the preference of debts due employees under the circumstances above outlined, those laws do not come within the provisions of section 212 of the Surrogate's Court Act. Under the laws of some of the States the preference here asked is granted, but, if the Legislature of the State of New York had intended that debts due employees of decedents should receive priority over other debts under subdivision 4 of that section, it is reasonable to assume that the statute would clearly express such an intent. The claims for preference are disallowed."

Whatever individual feelings may be respecting the present state of the law, no exception may be taken to the result thus attained, since the change, if any has taken place, would seem to have occurred by reason of the enactment of the hereinbefore quoted section of the Workmen's Compensation Law, which did not go into effect until more than a year after the filing of this opinion.

The same observation does not apply to the somewhat more extensive decision of Surrogate FEELEY of Monroe county in *Matter of Paine* (140 Misc. 928), since this slightly postdates the enactment. The usual care of this learned jurist and the fact that no reference is made in the opinion to the new enactment argue to the effect that it was not called to his attention or considered in the attainment of his result, which appears to have been influenced by the *Bawer* decision.

While *Matter of McCoy* (157 Misc. 281) contains the statement that "Federal or domestic laws prescribing preferences in payment of debts of a bankrupt or of an assignor for the benefit of creditors are inapplicable to the payment of this decedent's debts," the decision possesses no relevancy to the present issue, since the question there involved was the right of preference of a claimant for unpaid alimony.

The final decision on the subject, granting that the foregoing may properly be accorded that description, is contained in the opinion of this court in *Matter of Epstein* (154 Misc. 776), in which the right of an insurance carrier to a preference in payment of a premium for workmen's compensation insurance was upheld under section 130 of that law.

It will be obvious even to the casual reader that the interpretation which this court places upon section 212, subdivision 1, of the Surrogate's Court Act differs materially from that indicated by the distinguished surrogate of Monroe county in the *Paine* case. His conclusion as there stated is "that the debts intended to be pre-

ferred * * * were and are debts due to one or other of the governments mentioned," although he admits that "in the case of neither government was any such declaration of preference necessary in order to prefer the claim of the sovereign power. (*Matter of Niederstein*, 154 App. Div. 238.)"

This statement seems to imply that the Legislature committed a futile act in including this subdivision in section 212, which is not deemed a necessary or proper interpretation. Is it not more compatible with the inference of wisdom and foresight properly attributable to the solemn enactments of the legislative branch of the government that it desired to give a flexibility of operation to the statute which would permit courts to give effect to the periodically changing sentiments of the community without the necessity for widespread revision of the law?

In the course of broadening social consciousness, it has come to be the belief of a majority of the citizenry that persons of the classes in whose interests the Workmen's Compensation Law was enacted are entitled to special consideration in their persons and earnings. The Legislatures of this and other States have shown themselves responsive to this sentiment, and, in the opinion of this court, judicial tribunals should not be backward in interpreting these remedial acts in a liberal and sympathetic spirit. This was the effort which this court made in the *Epstein* case, and it has seen no reason to regret the result there attained. Many of the observations then made (See 154 Misc. 777, 778) are equally applicable to the present situation.

If, as was therein decided, premiums for workmen's compensation insurance are entitled to a preference in payment from an insolvent decedent's estate under section 130 of the Workmen's Compensation Law, and if, as is expressly provided in the closing sentence of this section, " claims for wages [are entitled to] prior preference," it follows that the claims for preference for wages in the present proceeding are well founded and must be allowed under subdivision 1 of section 212 of the Surrogate's Court Act.

According to the stipulation of facts, the claim of Harry Goodwin is for " wages due and owing for work, labor and services rendered " to the decedent. It accordingly comes within this description.

The claim of Louis Junod consists of two parts, nine dollars thereof being for similar services, and the balance for various items of embalming work at the rate of ten dollars per body. It was stipulated that all of the embalming work of the decedent's undertaking business was done by the claimant at the direction of the decedent on this piece-rate basis. Under such circumstances the manner of employment of the claimant is indistinguishable from that of any other employee with which modern industry is familiar

whose remuneration is based on the completed tasks performed instead of the hours or days of the duration of the employment. (*Matter of Henault* v. *Endres Co.*, 251 App. Div. 758; *Matter of Link* v. *Kennedy*, 231 id. 775; affd., 256 N. Y. 565.)

It follows that, on the facts as stipulated, the claims of Junod and Goodwin are entitled to preferences in payment, but that this must be denied to that of Newman.

Enter decree on notice in conformity herewith.